UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **CANDICE A. HOFF** | ) | CASE NO. 1:19-cv-01849 |
| *on behalf of herself and all others similarly situated* | ) ) | |
| | ) | JUDGE SOLOMON OLIVER, JR. |
| Plaintiff, | ) ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **MSAB PARK CREEK, LLC** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER
MOTION FOR CONDITIONAL CERTIFICATION,
EXPEDITED OPT-IN DISCOVERY, AND COURT-SUPERVISED
NOTICE TO POTENTIAL OPT-IN PLAINTIFFS**

**I.     INTRODUCTION**

On August 14, 2019, Plaintiff Candice Hoff initiated this collective and class action against Defendant MSAB Park Creek, LLC ("Defendant") under the Fair Labor Standards Act ("FLSA"), and the Ohio Minimum Fair Wage Standards Act ("OMFWSA").  The action challenges Defendant's alleged companywide practice and policy of failing to pay hourly employees overtime for all hours worked over 40 in a workweek.

Ms. Hoff pursues these claims as a Representative Plaintiff, on behalf of herself and other similarly-situated employees.  She does so pursuant to FLSA § 16(b), 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability" prescribed by the Act for unpaid minimum wages, overtime compensation, and liquidated damages "may be maintained against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated."

Section 16(b) specifies that "[n]o employee shall be a party plaintiff to any action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Thus, FLSA actions like this one are "collective actions," and require other affected individuals to "opt into" the litigation. *See Jackson v. Papa John's USA, Inc.*, No. 1:08-cv-2791, 2009 WL 385580, at *4 (N.D. Ohio Feb. 13 2009) ("under the FLSA a putative plaintiff must affirmatively opt into the class").[1]

Conditional certification is appropriately considered early in an FLSA collective action so that court-authorized notice can be given to potential opt-in plaintiffs. Before additional individuals opt in, the potential opt-in plaintiffs need to be notified of the present collective action and their right to join it. Only through proper notification will they have the opportunity to determine whether they would like to participate.

As shown below, Representative Plaintiff Hoff has satisfied the "modest factual showing" required for conditional certification and the issuance of notice. *Comer v. Wal-Mart Stores*, 454 F.3d 544, 546, 548 (6th Cir. 2006). Accordingly, the Court should conditionally certify this action as a collective action and order that notice be given to potential opt-ins of their right and opportunity to join in the action pursuant to 29 U.S.C. § 216(b).

II. **CONDITIONAL CERTIFICATION AND ISSUANCE OF NOTICE TO POTENTIAL OPT-IN PLAINTIFFS IS WARRANTED UNDER FLSA § 16(b) UPON A "MODEST FACTUAL SHOWING"**

This Judicial District has recognized that a collective action under the FLSA "furthers several important policy goals." *Jackson*, 2009 WL 385580, at *3. These goals, the Court explained, were identified by the Supreme Court in *Hoffman-LaRoche v. Sperling*, 493 U.S. 165 (1989):

> First, the collective action "allows . . . plaintiffs the advantage of

---

[1] Unreported cases are attached as EXHIBIT 1.

> lower individual costs to vindicate rights by the pooling of resources." Second, "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity."

*Jackson*, 2009 WL 385580, at *3 (quoting *Hoffman-LaRoche*, 493 U.S. at 170).

Three essential principles have guided the courts' implementation of the policy goals recognized in *Hoffman-LaRoche*.

### A. Conditional Certification Enables the District Court to Exercise Managerial Responsibility Over the Notice Process

*Hoffman-LaRoche* held that in a collective action, the district court "has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Hoffman-LaRoche*, 493 U.S. at 170-71. In the Sixth Circuit and elsewhere, district courts routinely play an active role in the opt-in discovery and notice process. *Jackson*, 2009 WL 385580, at *4-5; *Douglas v. GE Energy*, No. 1:07-cv-77, 2007 WL 1341779, at *8 (N.D. Ohio April 30, 2007); *Bradford v. Bed Bath & Beyond, Inc.*, 184 F. Supp. 2d 1342, 1345 (N.D. Ga. 2002); *Kane v. Gage Merch. Serv., Inc.*, 138 F. Supp 2d 212, 215 (D. Mass. 2001); *Morisky v. Public Serv. Elec. and Gas Co.*, 111 F. Supp. 2d 493, 497 (D. N.J. 2000); *Realite v. ARK Restaurants Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998).

### B. Managerial Control Over the Notice Process Should Be Exercised Early in the Case

Under *Hoffman-LaRoche*, "it lies within the discretion of a district court to begin its involvement early, at the point of the initial notice, rather than at some later time." *Hoffman-LaRoche*, 493 U.S. at 171. In *Jackson*, this Court recognized the benefits of "early judicial intervention" in the notice process:

> In *Hoffman-LaRoche*, the Supreme Court also noted the "wisdom and necessity for early judicial intervention in the management of litigation." When dealing with a collective action, a "trial court can better manage [the] action if it ascertains the contours of the action

3

> at the outset." Additionally, "[b]y monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative. Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed."

*Jackson*, 2009 WL 385580, at *4 (citations omitted) (quoting *Hoffman-LaRoche*, 493 U.S. at 171-72). *See also Braunstein v. Eastern Photographic Labs, Inc.*, 600 F.2d 335, 336 (2d Cir. 1978), *cert. denied*, 441 U.S. 944 (1979) (early facilitation of the opt-in process furthers the "broad remedial purpose" of the FLSA).

Early facilitation of the notice process is essential to the opt-in plaintiffs as well. The benefits of an FLSA collective action "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make an informed decision about whether to participate." *Hoffman-LaRoche*, 493 U.S. at 170. *Accord, Douglas*, 2007 WL 1341779, at *3.

Indeed, for potential opt-in plaintiffs, time is of the essence. The commencement of an FLSA collective action does not toll the running of the statute of limitations for putative class members. Rather, pursuant to the FLSA and the Portal-To-Portal Act, an opt-in plaintiff's claim against the employer is not commenced until the date his or her written consent to join the collective action is filed with the district court. 29 U.S.C. §§ 216(b) and 256. *See Cahill v. City of New Brunswick*, 99 F. Supp. 2d 464, 479 (D.N.J. 2000). The district court's involvement "ensures that all potential plaintiffs receive timely notice of a pending suit." *Garner v. G.D. Searle*, 802 F. Supp. 418, 422 (M.D. Ala. 1991). *Accord*, *Hoffman-La Roche*, 493 U.S. at 170.

    **C.**     **Courts Generally Grant Conditional Certification and Notice, Based Only Upon a "Modest Factual Showing"**

FLSA § 16(b) expressly authorizes a collective action to be maintained "by any one or more employees" on behalf of "themselves and other employees similarly situated." 29 U.S.C.

4

§ 216(b). To determine "whether proposed co-plaintiffs are, in fact, similarly situated for the purposes of the statute's requirements," the courts "have used a two-phase inquiry." *Comer*, 454 F.3d at 546. *See Jackson*, 2009 WL 385580, at *4 (discussing "the two-stage notification process"); *Hamilton v. Metropolitan Prop. of Am., Inc.*, No. 1:14-cv-2175-JG, at 2 (Feb. 25, 2015 N.D. Ohio) (same), *Douglas*, 2007 WL 1341779, at *8 (this "court adopts the two-tiered approach"); *Harrison v. McDonald's Corp.,* 411 F.Supp.2d 862, 864-65 (S.D. Ohio 2005) ("[c]ourts have generally adopted a two-tiered certification approach").

As the Sixth Circuit explained in *Comer*, the first phase, which the court referred to as "the notice stage":

> takes place at the beginning of discovery. The second occurs after all of the opt-in forms have been received and discovery has concluded.

*Comer*, 454 F.3d at 546. *See Jackson*, 2009 WL 385580, at *4.

At "the notice stage," the representative plaintiff must show "only that 'his position is similar, not identical, to the positions held by the putative class members,'" and this determination "need only be based on a modest factual showing." *Comer*, 454 F.3d at 548 (quoting *Pritchard v. Dent Wizard Int'l*, 210 F.R.D. 591, 596 (S.D. Ohio 2002) (quoting *Viciedo v. New Horizons Computer*, No. 2:01-CV-250, slip. op. (S.D. Ohio Dec. 4, 2001); *Allen v. Marshall Field & Co.*, 93 F.R.D. 438, 443 (N.D. Ill. 1982))). The determination "is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class.'" *Comer*, 454 F.3d at 547 (quoting *Morisky v. Public Serv. Elec. & Gas Co.,* 111 F. Supp. 2d 493, 497 (D.N.J. 2000) (quoting *Thiessen v. General Elec. Capital Corp.*, 996 F. Supp. 1071, 1080 (D. Kan. 1998); *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 238 (N.D.N.Y. 2002)). *See also Hamilton*, No. 1:14-cv-2175-JG, at 2-3 (Feb. 25, 2015 N.D. Ohio) (describing the lenient standard for notice-stage certification).

Ohio courts have found that the representative plaintiff's burden is minimal at the notice stage. *Douglas*, 2007 WL 1341779, at *8; *Jackson*, 2009 WL 385580, at *4; *Harrison v. McDonald's Corp.,* 411 F. Supp. 2d 862, 864-65 (S.D. Ohio 2005); *Pritchard,* 210 F.R.D. at 595. *See also Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623, 628 (D. Colo. 2002) (granting conditional certification based largely on the allegations of the complaint, where 3,000 potential opt-in plaintiffs existed).

Other circuit courts concur that a plaintiff's burden at the notice stage is minimal. *See Cameron-Grant v. Maxim Healthcare Serv., Inc.*, 347 F.3d 1240, 1243 (11th Cir. 2003) (citing *Hipp*, 252 F.3d at 1218 (11th Cir. 2001) ("At the notice stage, the district court makes a decision— usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members. Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification.'")); *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001), *cert. denied*, 536 U.S. 934 (2002) (notice determination "requires[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan"); *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995) (notice determination "is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class").

It is only "[a]t the second stage, following discovery, [that] trial courts examine more closely the question of whether particular members of the class are, in fact, similarly situated." *Comer*, 454 F.3d at 547; *Jackson*, 2009 WL 385580, at *5 (same); *Hamilton*, No. 1:14-cv-2175-JG, at 2 (Feb. 25, 2015 N.D. Ohio) (same). At that point "the court has much more information on which to base its decision and, as a result, [it] employs a stricter standard." *Comer*, 454 F.3d at 547 (citing *Morisky v. Public Serv. Elec. & Gas Co.*, 111 F.Supp.2d 493, 497 (D.N.J. 2000)).

*See also Goldman v. Radioshack Corp.*, No. 03-CV-0032, 2003 WL 21250571, at *8 (E.D. Pa. Apr. 16, 2003) ("A fact-specific inquiry is conducted only after discovery and a formal motion to decertify the class is brought by the defendant . . . . It is simply premature to do so now because we lack sufficient evidence to conduct a more rigorous inquiry."); *Mueller v. CBS, Inc.*, 201 F.R.D. 425, 428 (W.D. Pa. 2001) (holding that the second stage comes after the "putative class members have filed their consents to opt-in and further discovery has taken place to support plaintiff's assertions… and the matter is ready for trial.").

### III. PLAINTIFF HAS SATISFIED HER MODEST BURDEN OF SHOWING THAT THE POTENTIAL OPT-IN PLAINTIFFS IN THIS FLSA COLLECTIVE ACTION ARE SIMILARLY SITUATED

There is more than sufficient information to show that the potential opt-in plaintiffs are similarly situated such that prompt notice of the action should be given.

Representative Plaintiff Hoff alleged in her Compliant and has submitted a declaration stating that she and the potential opt-in plaintiffs are similarly situated. Representative Plaintiff alleges that Defendant failed to pay her and the class she seeks to represent legally-required overtime compensation for the hours they worked over 40 per workweek. Additionally, several Opt-In Party Plaintiffs have submitted declarations establishing that they are similarly situated to the Representative Plaintiff and the potential opt-in plaintiffs, having suffered under the same policy. *See* Dkt. #s 1-2; 4-1; 14-1 - 14-3.

#### A. The Complaint and Hoff Declaration Allege That Hoff and the Potential Opt-in Plaintiffs are Similarly Situated

In her First Amended Complaint, Representative Plaintiff Hoff defined the class as follows:

> All former and current individuals employed by MSAB Park Creek, LLC and who were paid on an hourly basis at any time between August 14, 2016 and the present.

FAC at ¶ 22 [Dkt. #7]. Representative Plaintiff and the class are similarly situated in several

regards.

First, they were all employed by Defendant as hourly employees. FAC at ¶¶ 18-19. Second, their pay schemes were identical, without being paid overtime for all hours worked over 40 per week. FAC at ¶¶ 18-19, 22, 35 - 37. From this evidence, under the requisite modest factual showing, it is reasonable to infer that these allegations are not a coincidence, but are in fact the product of a companywide policy to fail to pay overtime.

In addition to the allegations in Plaintiff's Complaint, Representative Plaintiff has submitted a declaration stating that she and the potential opt-in plaintiffs are similar in these regards. Representative Plaintiff has stated:

> I believe that I am similarly situated to the class of opt-in plaintiffs because, during my employment with Defendant, I observed that the class and I did not receive overtime compensation at a rate of one-and-one-half our regular rates for all hours worked over 40 in a workweek.

Declaration of Consent of Candice Hoff at ¶ 6 [Dkt. # 1-2].

Thus, Representative Plaintiff has sufficiently alleged that she and the potential opt-in plaintiffs are similarly situated. These specific and substantial allegations alone warrant conditional certification. *Reab*, 214 F.R.D. at 628.

### B. Other Opt-in Party Plaintiffs Have Submitted Declarations Establishing That They Are Similarly Situated to Representative Plaintiff and the Potential Opt-In Plaintiffs

Conditional certification is supported not only by Representative Plaintiff's own Declaration, but also by the Declarations of four other individuals who worked for Defendant during the relevant statutory period.[2] Each of these Opt-In Party Plaintiffs have stated:

> During my employment with Defendant, I observed that the class and I did not receive overtime compensation at a rate of one-and-

---

[2] *See* Declarations of Consent of Kaitlin Dienes [Dkt. #4], Jennifer Hamulak, Chelsea Soto, and Deshanee Williams [Dkt. #14].

> one-half [times] our regular rates for all hours worked over 40 in a workweek.

[Dkt. #4 and #14]. These Declarations corroborate the fact that there are employees of Defendant who are similarly situated with respect to the FLSA violations asserted in this case and who desire to join the action as opt-in plaintiffs.

These Declarations also demonstrate the widespread nature of Defendant's FLSA violations, as well as the breadth of the employees impacted. The claims do not just impact nurses' aides and/or resident care aides[3] alone. The alleged violations also extend to employees of the kitchen and dining room. *See* Declarations of Chelsea Soto (who worked as a cook) and Deshanee Williams (who worked as a Dining Room Attendant). [Dkt. #14].

Moreover, Defendant appears to have coerced statements from the majority of the class after the filing of the lawsuit— another significant indicator of the similarly situated nature of the putative class members. Defendant believed its employees were similar enough to require statements from all of them. This act supports Plaintiff's argument that they are similarly situated. These statements were discussed at the CMC with Court, and were identified in Defendant's initial disclosures, but have not yet been produced, despite Plaintiff's request. Nevertheless, Opt-in Plaintiff Jennifer Hamulak, who was required to sign one of the statements, has submitted a Declaration regarding the statements. Opt-In Hamulak states that

- after the filing of this Action, I was approached by Linda Felice and was instructed to sign a statement;

- I asked Linda what the statement was for, and why I was required to sign it. Linda told me the statement was required because the company would now be paying us for our breaks;

- I reviewed the statement, which stated that I always took my allotted breaks in the past, which was false. I questioned the accuracy and truthfulness of the statement

---

[3] Based on Plaintiff's investigation to date, it appears that the terms nurses' aide and resident care aide are synonymous.

> that the company prepared, but was instructed to sign it as is. I was told you have to sign it now because everyone has to take a break. I responded that we haven't been able to take a break for years, and that we are constantly interrupted by pages and resident care needs;
>
> - In response to my push back, Linda gave me a hard time and told me to sign the statement. I asked for a copy of the statement, but never received a copy;
>
> - The prepared statement was passed out to everyone on my floor to sign. Several other employees questioned the accuracy of the statements. Many asked "why are we signing this?" and "why is this coming up now?";
>
> - To my recollection, all of the employees were required to sign a statement.

*See* Declaration of Jennifer Hamulak at ¶¶ 5 – 10, attached hereto as EXHIBIT 2. Defendant's conduct demonstrates the need for conditional certification, as well as the need to get a neutral court-ordered communication to the putative class members.

These declarations, along with Representative Plaintiff's declaration, are more than sufficient evidence to warrant conditional certification. *Douglas*, 2007 WL 1341779, at *6 (two affidavits are "sufficient to warrant conditional treatment of the case as a collective action" and notice to the opt-in class); *Brown* at *19 (conditional certification appropriate based on allegations in a complaint supported by affidavits of two former employees). This Court should grant conditional certification and authorize notice.

## IV. PLAINTIFF'S PROPOSED OPT-IN DISCOVERY SHOULD BE APPROVED

Representative Plaintiff easily meets the minimal burden of showing that she is similarly situated to the potential opt-in plaintiffs. Therefore, conditional certification of the FLSA class, expedited opt-in discovery, and court-supervised notice are warranted, as discussed above.

To facilitate prompt notice to the potential opt-in plaintiffs, Representative Plaintiff has attached hereto a set of opt-in discovery requests. EXHIBIT 3. Therein, Plaintiff seeks the identity, contact information, and pertinent employment dates of all former and current hourly employees employed by Defendant at any time between August 14, 2016 and the present. The requested

10

information is necessary to determine the contact information for the potential opt-in plaintiffs who will be eligible to be notified of this lawsuit in the event the Court grants the instant Motion. In *Hoffman-La Roche*, the Supreme Court flatly affirmed the district court's approval of both expedited interrogatories seeking the names of potential opt-in plaintiffs and court-facilitated notice to the potential opt-ins. *Hoffman-La Roche*, 493 U.S. at 174.

As discussed above, time is of the essence because the commencement of an FLSA collective action does not toll the running of the statute of limitations for the potential opt-in plaintiffs on their FLSA claims. Accordingly, prompt notification is necessary for the potential opt-ins to receive the full benefit of the FLSA's collective action mechanism and to vindicate their FLSA rights in an economical and efficient manner. *See Hoffman-LaRoche*, 493 U.S. at 170 (the benefits of a collective action "depend on employees receiving accurate and timely notice"); *accord Douglas*, 2007 WL 1341779, at *3.

**V.     CONCLUSION**

For the foregoing reasons, Representative Plaintiff respectfully requests that the Court conditionally certify the proposed FLSA class and implement a procedure, set forth in the accompanying proposed order (attached as EXHIBIT 4), whereby potential opt-in plaintiffs are notified of Plaintiff's FLSA claims and given an opportunity to join this collective action as party plaintiffs pursuant to 29 U.S.C. § 216(b).

Respectfully submitted,

**COHEN ROSENTHAL & KRAMER LLP**

/s/ Jason R. Bristol
JASON R. BRISTOL (0072989)
jbristol@crklaw.com
3208 Clinton Avenue
One Clinton Place
Cleveland, Ohio 44113
216-815-9500 [Telephone and Facsimile]

*Attorneys for Plaintiff Candice Hoff*

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing was filed with the Court's electronic filing system this 15th day of January, 2020, and service will be made by the Court's automated system.

/s/ Jason R. Bristol
Jason R. Bristol