**CONFIDENTIAL SETTLEMENT AGREEMENT
AND MUTUAL RELEASE OF CLAIMS**

This Settlement Agreement and Mutual Release of Claims ("Agreement") is entered into by and between Candice Hoff on the one hand (hereinafter "Employee" or "Lead Plaintiff"); and MSAB Park Creek, LLC on the other hand (hereinafter "Defendant" or "Employer"):

**WITNESSETH:**

**WHEREAS**, Employee was employed by Employer;

**WHEREAS**, Employee initiated a lawsuit captioned *Hoff v. MSAB Park Creek, LLC*, N.D. Ohio Case No. 1:19-cv-1849 (the "*Hoff* Lawsuit") seeking damages from Employer for alleged violations of the Fair Labor Standards Act ("FLSA") of unpaid overtime compensation, unpaid minimum wages, liquidated damages, attorneys' fees and costs; Employer denied the alleged violations of the FLSA; and a bona fide dispute exists between Employer and Employee as to these claims (the "Subject Matter");

**WHEREAS**, by way of an Order issued on June 22, 2020, the U.S. District Court for the Northern District of Ohio granted Employee's motion for conditional certification and conditionally certified an FLSA collective action for a collective defined as:

> [a]ll former and current individuals employed by MSAB Park Creek, LLC and who were paid on an hourly basis at any time between August 14, 2016 and the present;

**WHEREAS,** pursuant to the Court's June 22, 2020 Order, collective class notice was issued to the individuals who fell within the collective class definition, and a total of sixteen (16) individuals opted in to the FLSA collective action ("Opt-In Plaintiffs"). The complete list of individuals who signed consent forms and who the parties agree are members of the collective class (including Lead Plaintiff Candice Hoff) is as follows: Raven Adams; Douglas Aguilar-Palus; Victoria Case; Kimberly Cooke; Sheila Devera; Kaitlin Dienes; Jennifer Hamulack; Candice Hoff; Alyssa Ipavec; LaRuth Jackson; Sade Jones; Kayla Jugan; Milica Radivojevic; Chelsea Soto; Tylor Tohati; Kalie Warnick; and Deshanee Williams;

**WHEREAS,** the Court approved a Notice to Potential Class Members ("Notice") form that was mailed to the Opt-In Plaintiffs which stated, "If you choose to join this lawsuit, you will be bound by the Court's judgment, whether it is favorable or unfavorable to the class. You will also be bound by, and share in, any settlement that may be reached on behalf of the class." The Notice further stated that, "By joining this lawsuit: You designate the Lead Plaintiff [that is, Candice Hoff] as your agent to make decisions on your behalf concerning the litigation, and the method and manner of conducting the litigation…" The Opt-In Plaintiffs all signed consent forms stating, "I hereby consent, agree, and opt-in to be a party Plaintiff in [the *Hoff* Lawsuit], pursuant to the terms and conditions contained in the Notice I received with regard to this action. I agree to be represented by Cohen Rosenthal & Kramer LLP. I understand that by filing this consent, I will be bound by the judgment of the Court on all issues in this case." The Opt-In Plaintiffs agreed to

**EXHIBIT A**

be bound by any settlement agreed to by Lead Plaintiff, and will be bound by this Agreement if it is approved by the Court;

**WHEREAS,** the parties engaged in a mediation conference conducted by Magistrate Judge William H. Baughman, Jr. on April 16, 2021, at which time the parties' reached a resolution and Class Counsel and Defendant's Counsel appeared on the record to outline the settlement terms. Per the settlement terms, the parties have prepared this Agreement further reflecting and detailing the terms of the settlement of the *Hoff* Lawsuit. The terms set forth in this Agreement, subject to Court approval, will fully and finally settle, resolve, and dismiss with prejudice the *Hoff* Lawsuit;

**NOW, THEREFORE**, in consideration of the promises, covenants and agreements set forth herein, it is hereby agreed as follows:

## AGREEMENT

1. **Settlement Payments:** Employer agrees to pay a total sum of $45,000.00, which will be divided as follows:

    (a) The following amounts will be paid to Employee and the Opt-In Plaintiffs as settlement for their claims for payment for back overtime compensation and minimum wages:

    | | | |
    |---|---|---|
    | (i) | Raven Adams | $162.22 |
    | (ii) | Douglas Aguilar-Palus | $142.54 |
    | (iii) | Victoria Case | $368.18 |
    | (iv) | Kimberly Cooke | $314.95 |
    | (v) | Sheila Devera | $23.75 |
    | (vi) | Kaitlin Dienes | $2723.78 |
    | (vii) | Jennifer Hamulack | $790.22 |
    | (viii) | Candice Hoff | $1760.22 |
    | (ix) | Alyssa Ipavec | $852.54 |
    | (x) | LaRuth Jackson | $77.00 |
    | (xi) | Sade Jones | $247.08 |
    | (xii) | Kayla Jugan | $207.75 |
    | (xiii) | Milica Radivojevic | $463.26 |

  (xiv) Chelsea Soto    $1068.18

  (xv) Tylor Tohati    $738.43

  (xvi) Kalie Warnick    $1342.30

  (xvii) Deshanee Williams    $346.59

  (b) The following amounts will be paid to Employees as settlement for Employees' claims for payment for alleged statutory damages:

  (i) Raven Adams    $162.22

  (ii) Douglas Aguilar-Palus    $142.54

  (iii) Victoria Case    $368.18

  (iv) Kimberly Cooke    $314.95

  (v) Sheila Devera    $23.76

  (vi) Kaitlin Dienes    $2723.78

  (vii) Jennifer Hamulack    $790.22

  (viii) Candice Hoff    $1760.22

  (ix) Alyssa Ipavec    $852.54

  (x) LaRuth Jackson    $77.01

  (xi) Sade Jones    $247.09

  (xii) Kayla Jugan    $207.76

  (xiii) Milica Radivojevic    $463.26

  (xiv) Chelsea Soto    $1068.18

  (xv) Tylor Tohati    $738.43

  (xvi) Kalie Warnick    $1342.30

  (xvii) Deshanee Williams    $346.59

(c) The following amounts will be paid to Employee as a service award for her participation in the prosecution of this collective action lawsuit:

    (i)      Candice Hoff      $5,000.00

(d) The following amounts will be paid to Employee's counsel for Employee's attorneys' fees and costs as follows:

    (i)      Cohen Rosenthal & Kramer LLP      $14,998.50 (fees) and $1743.48 (expenses)

Employer will deliver the checks to Cohen Rosenthal & Kramer LLP's offices no later than 15 business days after Employer receives an executed copy of this Agreement or the Court enters an Order granting approval of this Agreement and dismisses the lawsuit with prejudice, whichever is later.

Employee's and the Opt-In Plaintiffs' payments referenced in (a) above will be subject to the withholding of all applicable federal, state and local taxes. Employer will determine the proper tax withholding amounts in accordance with Employee's and each Opt-In Plaintiffs' previously elected wage withholding instructions. Employer will report Employee's and the Opt-In Plaintiffs' settlement payments on an IRS Forms W-2. Employer will issue a Form 1099 to Employee and each respective Opt-In Plaintiff for the payments referenced in (b) and (c) above. Employer will issue to Cohen Rosenthal & Kramer LLP a Form 1099 with respect to the attorneys' fees and costs in section (d) above. Employer is responsible for its share of payroll taxes required by law with respect to the payments referenced in (a) above. Employee and the Opt-In Plaintiffs are responsible for all taxes required by law with respect to payments referenced in (b), (c), and (d) above.

Employee and the Opt-In Plaintiffs agree that the above payments represent any and all back pay, severance pay, wages (whether overtime or otherwise), bonuses, vacation pay, front pay, damages (whether liquidated, compensatory, exemplary, punitive or otherwise), benefits, attorneys' fees, costs, interest, or other monies to which Employee and the Opt-in Plaintiffs may have been entitled to receive or recover in connection with their employment with Employer. Employee and the Opt-In Plaintiffs further agree that the above payments represent full and complete satisfaction and payment of any and all monies purportedly due and owing to them arising out of, or relating to, their employment with the Employer.

2. **Mutual Release of Claims:** In consideration for the promises set forth in this Agreement, Employee and the Opt-In Plaintiffs hereby voluntarily and forever relinquish any claim they may have against Employer, its owners, directors, officers, attorneys, and employees including without limitation any claim he may have regarding the Subject Matter. For good and valuable consideration, Employee and the Opt-in Plaintiffs do hereby fully, finally and forever release, waive and irrevocably discharge, from any and all claims, actions and causes of action, suits, debts, liability, and any demands whatsoever, in law or in equity, whether known or unknown, vested or contingent, which Employee or the Opt-In Plaintiffs ever had, or may now have, including without limitation those that arise from or relate to the Subject Matter and their employment with Employer. This includes, but is not limited to, all claims or charges which could

have been raised under common law, breach of contract, promissory estoppel, defamation, invasion of privacy, intentional infliction of emotional distress, negligence, interference with contractual or other relationships, any federal, state or local statutes or laws, or any Internal Policies of Employer that govern Employee's and the Opt-In Plaintiffs' employment relationship with Employer, including any claim and charge that Employee and the Opt-In Plaintiffs' have or may have against Employer which might arise out of the Fair Labor Standards Act; the Equal Pay Act; Title VII of the Civil Rights Act of 1964, as amended; the Age Discrimination in Employment Act of 1967, as amended; the Americans with Disabilities Act of 1990, as amended; the Civil Rights Act of 1991, as amended; the United States Constitution; the Civil Rights Acts of 1866 or 1871 (42 U.S.C. Sections 1981, 1983, 1985, et seq.); the Older Workers Benefit Protection Act of 1990; Chapter 4112 of the Ohio Revised Code; Chapter 124 of the Ohio Revised Code; wrongful discharge claims under Ohio law; and any other Federal, State, City, County or other local law or ordinance concerning employment, discrimination, harassment, retaliation, or in any other manner regulating or otherwise concerning wages, hours or any other terms or conditions of employment, which, (a) have been filed, (b) are now pending, or (c) could have been filed, relating to any acts which have transpired in regard to Employee's and the Opt-In Plaintiffs' relationship with Employer.

In consideration of the promises set forth in this Agreement, Employer does hereby waive, release, acquit and forever discharge Employee and the Opt-In Plaintiffs and their heirs, successors and assigns from any and all claims, of whatever nature, whether known or unknown, which exist or may exist on Employer's behalf against Employee or any of the Opt-In Plaintiffs as of the date of this Agreement, including without limitation those which, (a) have been filed, (b) are now pending, or (c) could have been filed, relating to any acts which have transpired in regard to Employee's or the Opt-In Plaintiffs' relationship with Employer.

3. **Stipulation as to Judicial Approval of Settlement.** The Settlement payment is in full accord, satisfaction, and final compromise and settlement of any and all claims, demands, actions, causes of action, suits, damages, losses, costs, attorneys' fees and expenses, of any and every nature whatsoever, known or unknown, including, but not limited to, any and all claims which Employee and the Opt-in Plaintiffs and Employer may have or claim to have relating to their employment relationship with each other. Employee and the Opt-In Plaintiffs specifically acknowledge that there is a dispute as to whether they were properly compensated pursuant to the FLSA and the Ohio Minimum Fair Wage Standards Act ("the OMFWSA"); accordingly, **Employee and the Opt-In Plaintiffs acknowledge, stipulate and herby certify that the amount payable under this Agreement includes and represents payment for all wages, liquidated damages, attorneys' fees, or other amounts Employees claim to be owed to them by operation of the FLSA or the OMFWSA.**

4. **No Assignment of Claims:** Employee represents and warrants that she is the sole and lawful owner of all rights, title and interest in and to all released matters, claims and demands referred to herein. Employee further represents and warrants that there has been no assignment or other transfer of any interest in any such matters, claims or demands that Employee may have against the Employer.

5. **Neutral Reference and Non-Disparagement:** Upon request from prospective employers of Employee, Employer agrees to provide a neutral reference, confirming the fact of

any of the Employee's former employment, starting and ending dates of employment, and former compensation.

6. **Confidentiality:**

a. Employee and Opt-In Plaintiffs agree that as a condition of this settlement agreement, unless they are compelled to do so by law, they will not disclose to any other person any information regarding the existence or substance of this Agreement or the communications and discussions related to the mediation of the Subject Matter, except that they may discuss those items with their immediate family, financial advisors, or attorneys with whom Employee and Opt-In Plaintiffs choose to consult regarding the consideration of this Agreement, provided that any such individual agrees to keep that information strictly confidential and disclose it to no other person. If Employee or any Opt-In Plaintiff is asked about any claims they may have had against Employer or the Litigation, it shall not be a breach of this Paragraph for Employee or the Opt-In Plaintiff to say "the case has been resolved."

b. Employer, unless required by law, will not disclose to any other person any information regarding the existence or substance of this Agreement or the communications and discussions related to the mediation of the Subject Matter, except that it may discuss the terms of this Agreement with persons within Employer's company with an actual need to know, and its tax advisors, insurers, consultants, accountants, directors, officers, bank representatives, or attorneys with whom it chooses to consult regarding this Agreement and/or the settlement of the lawsuit. If Employer is asked about any claims Employee may have against it, or the Litigation, it will not be a breach of this Paragraph for it to say that "the case has been resolved."

c. Employee and Employer agree that Opt-In Plaintiffs shall be notified of the obligations contained in this paragraph by the inclusion of a "Confidentiality Notice" with the payments outlined in Paragraphs 1(a) and (b) above. The Confidentiality Notice shall consist of the language included in Paragraph 6(a) above.

7. **Non-Admission of Liability:** Employee acknowledges and agrees that the Employer's participation in this Agreement is not to be construed as an admission of any wrongdoing or liability whatsoever by or on behalf of the Employer, or any of its directors, officers, agents or representatives and that this Agreement may not be used in subsequent litigation except as to enforce the terms of this Agreement.

8. **Destruction of Discovery Material:** Employee agrees that she will destroy all the documents obtained through discovery in the Lawsuit and instruct her attorneys to do the same. Nothing in this section precludes Employee from retaining documents necessary for tax purposes or their attorneys from retaining and preserving their work product relating to their representation of Employee and the Opt-In Plaintiffs.

9. **Governing Law and Venue:** The Parties agree that this Agreement shall be interpreted, construed, and enforced in accordance with the laws of the State of Ohio without regard to its conflicts of law rules. The United States District Court for the Northern District of Ohio shall retain jurisdiction to resolve disputes arising from the enforcement of this Agreement.

10. **Construction:** The Parties expressly agree and acknowledge that this Agreement is not to be construed against any of the Parties on the basis of which party drafted the Agreement.

11. **Counterparts:** This Agreement may be signed in counterparts, and all such counterparts taken together shall constitute the same Agreement. Electronic and facsimile transmissions of this Agreement shall be deemed originals.

12. **Severability:** The Parties agree that the terms of this Agreement are intended to be severable. If any term, provision, clause or item of this Agreement is declared to be invalid or unenforceable by any court or administrative body of competent jurisdiction, the term, provision, clause or item should be reformed (if possible, or severed if not) to give maximum effect to the intentions of the Parties, and the remaining portions of the Agreement shall be enforced to give effect to the Parties' intentions to the maximum extent possible.

13. **Entire Agreement:** The Parties agree that this Agreement is the entire Agreement between them and represents their full and complete understanding. No prior or contemporaneous oral agreements may be offered to alter the terms of this Agreement. This Agreement shall be binding upon and inure to the benefit of the Parties hereto and the Parties' heirs, executors, successors and assigns. This Agreement may not be amended, modified or terminated, in whole or in part, except by a written instrument executed by the Parties.

**WHEREFORE, the undersigned assert that they have read the foregoing Confidential Settlement Agreement and Mutual Release of Claims and declare that they have consulted with counsel and fully understand this Agreement and its legal significance and voluntarily sign it below to signify their agreement with its terms.**

Date: May 25, 2021

*Candice Hoff (May 25, 2021 17:33 EDT)*
Name: Candice Hoff

Date: _____

_____
MSAB Park Creek, LLC

By: _____

Its: _____

10. **Construction:** The Parties expressly agree and acknowledge that this Agreement is not to be construed against any of the Parties on the basis of which party drafted the Agreement.

11. **Counterparts:** This Agreement may be signed in counterparts, and all such counterparts taken together shall constitute the same Agreement. Electronic and facsimile transmissions of this Agreement shall be deemed originals.

12. **Severability:** The Parties agree that the terms of this Agreement are intended to be severable. If any term, provision, clause or item of this Agreement is declared to be invalid or unenforceable by any court or administrative body of competent jurisdiction, the term, provision, clause or item should be reformed (if possible, or severed if not) to give maximum effect to the intentions of the Parties, and the remaining portions of the Agreement shall be enforced to give effect to the Parties' intentions to the maximum extent possible.

13. **Entire Agreement:** The Parties agree that this Agreement is the entire Agreement between them and represents their full and complete understanding. No prior or contemporaneous oral agreements may be offered to alter the terms of this Agreement. This Agreement shall be binding upon and inure to the benefit of the Parties hereto and the Parties' heirs, executors, successors and assigns. This Agreement may not be amended, modified or terminated, in whole or in part, except by a written instrument executed by the Parties.

WHEREFORE, the undersigned assert that they have read the foregoing **Confidential Settlement Agreement and Mutual Release of Claims** and declare that they have consulted with counsel and fully understand this Agreement and its legal significance and voluntarily sign it below to signify their agreement with its terms.

Date:_____

Name: Candice Hoff

Date: _May 26, 2021_

MSAB Park Creek, LLC

By: _David A Fobes_

Its: _President_